UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br>IDEAL PROPERTY INVESTMENTS LLC,<br><br>Debtor(s). | Bankruptcy No. 24-01421-FPC11<br><br>Adv. No. |
| IDEAL PROPERTY INVESTMENTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIRST FED BANK,<br><br>Defendant. | **COMPLAINT FOR FRAUDULENT TRANSFER, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF** |

COMES NOW, Plaintiff Ideal Property Investments LLC ("Debtor" or "Ideal"), by and through its attorneys of record, and alleges the following causes of action:

## I.  JURISDICTION

1.1    These actions arise under Rule 7001 of the Federal Rules of Bankruptcy Procedure and seek to avoid, recover, and preserve estate property either transferred or currently held by Defendant pursuant to 11 U.S.C. §§ 506, 542, 548, 550 and 551.

ADVERSARY COMPLAINT - 1

DBS|LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

1.2 This adversary matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (K).

1.3 This Court has jurisdiction herein pursuant to 28 U.S.C. § 1334.

1.4 Venue herein is proper as set forth in 28 U.S.C. § 1409.

## II. PARTIES

2.1 Plaintiff is a Washington limited liability company. Plaintiff petitioned for relief under Chapter 11 of the Bankruptcy Code on September 5, 2024.

2.2 Defendant First Fed Bank ("First Fed" or "Defendant") is a Washington state commercial bank.

## III. STATEMENT OF FACTS

3.1 Creative Technologies, LLC, a Washington limited liability company ("Creative"), manufactures water stations that are utilized around the country in grocery stores and other retail locations.

3.2 Debtor is a related entity to Creative owned by Creative's principals. Debtor owns real property, including a number of warehouse properties utilized in part by Creative's business.

3.3 Water Station Management LLC ("Water Station") is a related company to Debtor that services the water stations.

3.4 Refreshing USA LLC ("Refreshing") is a related company to Debtor that owns the water stations.

3.5 On or around December 10, 2020, First Fed extended a commercial loan (the "Creative Loan") to Creative, in the principal amount of Twenty-One Million Dollars ($21,000,000).

3.6 Ideal was not, and has never been, a guarantor on the Creative Loan.

3.7 First Fed did not loan money to Refreshing or Water Station.

3.8 Ideal's bank records reflect that from May 2022 through September 2023,

DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737

Creative transferred $846,000 in funds to Ideal. In that same time frame, Refreshing transferred $7,081,600 in funds to Ideal. In that same time frame, Water Station transferred $1,774,844 in funds to Ideal.

3.9 Debtor is informed and believes that Refreshing and Water Station transferred funds to Creative that were then further transferred to Ideal.

3.10 Debtor is informed and believes that it received similar transfer of funds from all three affiliated entities in other relevant periods such that the entry in its financial records of an obligation from Debtor solely to Creative in the approximate amount of $31.7 Million Dollars is inaccurate and should be instead attributed to all three entities—Refreshing, Creative and Water Station.

3.11 Debtor, as lessor, and Creative, as lessee, entered into leases for certain of Ideal's real property, with monthly payments owed by Creative to Ideal. Debtor is informed and believes that Creative did not pay monthly rent or other charges owed to Ideal under the leases, and such amounts remain outstanding generating an offset to any amount owed to Creative, which offset is not properly reflected in Ideal's financial records.

3.12 On or around March 12, 2021, First Fed extended a commercial loan (the "Tualatin Loan") to Ideal, in the principal amount of Two Million Sixty-Two Thousand Five Hundred Dollars ($2,062,500), for the purchase of a real property in Tualatin, Oregon. The Tualatin Loan was secured by real property located at 19355 SW Teton Avenue, Tualatin, OR 97062 (the "Tualatin Property").

3.13 On or around September 7, 2021, First Fed extended a commercial loan (the "Beverly Park Loan") to Debtor, in the principal amount of Four Million Nine Hundred Eight Thousand Dollars ($4,980,000), for the purchase of a real property in Everett, Washington. The Beverly Park Loan was secured by real property located at 11410 Beverly Park Road, Everett, WA 98204 (the "Beverly Park Property").

3.14 On or about September 2022, First Fed declared Creative to be in default on the

ADVERSARY COMPLAINT - 3

DBS│LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

24-80033-FPC   Doc 1   Filed 11/08/24   Entered 11/08/24 15:51:22   Pg 3 of 12

Creative Loan.

3.15    On or about September 2022, First Fed declared Ideal to be in default on the Tualatin Loan and Beverly Park Loan.

3.16    Ideal contested the default, but on February 16, 2023, Ideal entered into a Credit Accommodation and Enhancement Agreement ("Credit Enhancement Agreement") with First Fed. Under the terms of the Credit Enhancement Agreement, First Fed agreed to forbear on enforcing its contractual default remedies for four and a half months, to June 30, 2023, provided certain other defaults or contingencies did not occur.

3.17    Nowhere in the Credit Enhancement Agreement did Ideal agree to obligate itself on, or guaranty, the Creative Loan.

3.18    Creative signed the Credit Enhancement Agreement, but only as a guarantor on the Tualatin and Beverly Park Loans.

3.19    At the time Ideal entered into the Enhancement Agreement, Ideal owed the following principal amounts on its two loans with First Fed:

a.   Tualatin Loan: $1,965,655.80

b.   Beverly Park Loan: $4,816,522.26

3.20    At the time Ideal entered into the Credit Enhancement Agreement, Ideal owed just $24,516.48 in accrued and unpaid interest on the Tualatin and Beverly Park Loans.

3.21    In exchange for the brief forbearance period, First Fed required Ideal to pledge additional collateral worth at least Sixteen million dollars ($16,000,000).[1]

3.22    In accordance with the Credit Enhancement Agreement, Ideal pledged the following additional real property collateral to secure the Tualatin and Beverly Park Loans:

- 27602 40th Ave NW, Stanwood, WA 98292
- 27423 40th Ave NW, Stanwood, WA 98292

---

[1] Based on the present value of Ideal's real estate assets (not including Beverly Park and Tualatin), minus debts held by other creditors and secured by first-position liens with priority over First Fed's liens. Finelli Decl., (ECF No. 110), Ex. B.

ADVERSARY COMPLAINT - 4

DBS|LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

24-80033-FPC    Doc 1    Filed 11/08/24    Entered 11/08/24 15:51:22    Pg 4 of 12

- 7925 W Arby Avenue, Las Vegas, NV 89113
- 4237 East Magnolia Street, Phoenix, AZ 85034
- 877 Orange Ave W, Tallahassee, FL 32310
- 700 S Arizona Blvd, Coolidge, AZ 85128
- 1930 N 22nd Avenue, Phoenix, AZ 85009
- 653 East 20th St., Yuma, AZ 85365
- 530 Opper Street, Escondido, CA 92029
- 2709 Electronic Lane, Dallas, TX 75220
- 3200 Shoreline Drive, Camano Island, WA 98282
- 14925 35th Ave NE, Marysville, WA 98270
- 12 Emery Road, Oroville, WA 98844
- 3811 188th St NE, Arlington, WA

(collectively, the "Excess Collateral").

3.23　First Fed also required Ideal to pledge certain additional collateral at closing ("Additional Collateral"), in addition to the Excess Collateral. These properties included:

- 8460 Thomas Avenue, Bridgeview, IL 60455
- 25377 Huntwood Avenue, Hayward, CA 94544

3.24　First Fed also required Ideal to execute second Deeds of Trust on the Tualatin and Beverly Park Properties.

3.25　Ideal executed, and First Fed recorded, deed of trust or mortgage documents on Excess Collateral, the Additional Collateral, and the Tualatin and Beverly Park Properties. Those security instruments professed to secure both the Tualatin and Beverly Park Loans, as well as the Creative Loan and a $3,675,000 loan extended by First Fed to another company, 8825, LLC.

3.26　At the time Ideal signed the Credit Enhancement Agreement and executed the security instruments in First Fed's favor, or as a result of the same, it was incurring debts that

ADVERSARY COMPLAINT - 5

DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205　Seattle, WA 98125
p: 206.489.3802　|　f: 206.973.8737

24-80033-FPC　Doc 1　Filed 11/08/24　Entered 11/08/24 15:51:22　Pg 5 of 12

were beyond its ability to pay when due. For example, Ideal was already not timely making payments on its existing debts, such as the Beverly Park and Tualatin loans, at the time. Further, Ideal at the time of the Credit Enhancement Agreement, or shortly thereafter, became delinquent with multiple secured lenders.

3.27  At the time Ideal signed the Credit Enhancement Agreement and executed the security instruments in First Fed's favor, its liabilities exceeded its assets, rendering it insolvent.

3.28  At the time Ideal signed the Credit Enhancement Agreement and executed the security instruments in First Fed's favor, or as a result of the same, Ideal was unreasonably undercapitalized for the ongoing operation of its business. For example, Ideal did not have sufficient capital to maintain the bare minimum of insurance on all of its real property assets, leading numerous lenders to force place insurance. Ideal also lacked sufficient capital to service its secured loans.

3.29  The Credit Enhancement Agreement specifically stated that it did not preclude Ideal from obtaining third-party financing to pay off First Fed in full.

3.30  On or about August 15, 2023, Socotra REIT I LLC ("Socotra") extended a commercial loan (the "Socotra Loan") to Ideal, in the principal amount of Seven Million Seven Hundred Thousand Dollars ($7,700,000). The Socotra Loan was secured by two real properties located in California, 25377 Huntwood Avenue, Hayward, CA 94544 (the "Hayward Property") and 530 Opper Street, Escondido, CA 92029 (the "Escondido Property").

3.31  Ideal used approximately $7.7 million in funds from the Socotra Loan to pay down its indebtedness to First Fed. However, First Fed did not apply the funds to pay down Ideal's Tualatin or Beverly Park Loans. Instead, it applied these funds from Ideal to pay down the Creative Loan, which provided no benefit to Ideal.

3.32  Upon information and belief, Ideal paid First Fed certain amounts from other cash-out refinances of its other real property assets (the "Additional Funds"), and again, First

ADVERSARY COMPLAINT - 6

DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737

24-80033-FPC    Doc 1    Filed 11/08/24    Entered 11/08/24 15:51:22    Pg 6 of 12

Fed did not credit those amounts to Ideal's Tualatin and Beverly Park Loans, and thus Ideal did not benefit from such transfers of its assets to First Fed.

3.33 On or about November 21, 2023, Ideal executed two additional Deeds of Trust in favor of First Fed, on the Hayward Property and the Escondido Property. Again, those security instruments professed to secure both the Tualatin and Beverly Park Loans, as well as the Creative Loan and a $3,675,000 loan extended by First Fed to another company, 8825, LLC.

## IV. FIRST CAUSE OF ACTION – 11 U.S.C. § 548

4.1 Ideal realleges the allegations set forth above and incorporates them by reference herein.

4.2 Ideal granted First Fed security interests on the Excess Collateral and the Additional Collateral without receiving reasonably equivalent value in exchange for such transfers.

4.3 Upon information and belief, at the time Ideal granted First Fed security interests on the Excess Collateral and the Additional Collateral, Ideal was insolvent or became insolvent as a result of the transfers.

4.4 Upon information and belief, at the time Ideal granted First Fed security interests on the Excess Collateral and the Additional Collateral, Ideal was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with Ideal constituted unreasonably small capital.

4.5 Upon information and belief, at the time Ideal granted First Fed security interests on the Excess Collateral and the Additional Collateral, Ideal intended to incur, or believed it would incur, debts that were beyond its ability to pay as they matured.

4.6 Ideal's security interests granted to First Fed on the Excess Collateral and Additional Collateral constitute constructively fraudulent transfers.

4.7 Ideal is entitled to avoidance of the security interests and a declaration that the

ADVERSARY COMPLAINT - 7

DBS|LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

24-80033-FPC    Doc 1    Filed 11/08/24    Entered 11/08/24 15:51:22    Pg 7 of 12

security interests are void.

## V. SECOND CAUSE OF ACTION – 11 U.S.C. § 544; RCW 19.40.041

5.1     Ideal realleges the allegations set forth above and incorporates them by reference herein.

5.2     Ideal granted First Fed security interests on the Excess Collateral and the Additional Collateral without receiving reasonably equivalent value in exchange for such transfers.

5.3     Upon information and belief, at the time Ideal granted First Fed security interests on the Excess Collateral and the Additional Collateral, Ideal was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with Ideal constituted unreasonably small capital.

5.4     Upon information and belief, at the time Ideal granted First Fed security interests on the Excess Collateral and the Additional Collateral, Ideal intended to incur, or believed it would incur, debts that were beyond its ability to pay as they matured.

5.5     Ideal's security interests granted to First Fed on the Excess Collateral and Additional Collateral constitute constructively fraudulent transfers.

5.6     Ideal is entitled to avoidance of the security interests and a declaration that the security interests are void.

## VI. THIRD CAUSE OF ACTION – DECLARATORY JUDGMENT

6.1     Ideal realleges the allegations set forth above and incorporates them by reference herein.

6.2     On or about August 2023, Ideal made a payment to First Fed in the approximate amount of Seven million seven hundred thousand dollars ($7,700,000) (the "Funds").

6.3     Upon information and belief, Ideal paid First Fed the Additional Funds as well.

6.4     Pursuant to the terms of the Promissory Notes governing the Tualatin and Beverly Park Loans, First Fed was obligated to apply the Funds and the Additional Funds "first

ADVERSARY COMPLAINT - 8

DBS|LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

24-80033-FPC    Doc 1    Filed 11/08/24    Entered 11/08/24 15:51:22    Pg 8 of 12

to any accrued unpaid interest; then to principal . . ."

6.5 First Fed failed to apply the Funds and the Additional Funds to the Tualatin or Beverly Park Loans at all, instead crediting the funds to the Creative Loan, which Ideal was not obligated on.

6.6 Had First Fed properly credited the Funds and the Additional Funds, these amounts would have been sufficient to pay in full the outstanding amounts due on the Tualatin and Beverly Park Loans.

6.7 First Fed's failure to credit the Funds and the Additional Funds to the Tualatin and Beverly Park Loans was a breach of the Promissory Notes.

6.8 Ideal is entitled to a Declaratory Judgment declaring that First Fed improperly credited the Funds and the Additional Funds, and that the Funds and the Additional Funds should be credited to the amounts due on the Tualatin and Beverly Park Loans as of August 2023.

6.9 Ideal is entitled to a Declaratory Judgment declaring that upon proper crediting of the Funds and the Additional Funds, the Tualatin and Beverly Park Loans are paid in full.

## VII. FOURTH CAUSE OF ACTION – INJUNCTIVE RELIEF

7.1 Ideal realleges the allegations set forth above and incorporates them by reference herein.

7.2 Ideal paid First Fed paid First Fed sufficient funds to pay in full the outstanding amounts due on the Tualatin and Beverly Park Loans.

7.3 First Fed failed to properly credit the Funds and the Additional Funds, failed to recognize the payment in full of the Tualatin and Beverly Park Loans, and failed to release the security interests it holds in the Tualatin and Beverly Park Properties.

7.4 Ideal is entitled to injunctive relief requiring First Fed to reconvey all Deeds of Trust it holds on the Tualatin and Beverly Park Properties pursuant to RCW 7.40.020 or any other applicable remedy at law or equity.

ADVERSARY COMPLAINT - 9

DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

24-80033-FPC    Doc 1    Filed 11/08/24    Entered 11/08/24 15:51:22    Pg 9 of 12

7.5     Ideal is entitled to injunctive relief requiring First Fed to disgorge any amount of the Funds and the Additional Funds it has retained, over and above the amounts required to pay off the Tualatin and Beverly Park Loans as of August 2023.

## VIII.     FIFTH CAUSE OF ACTION - 11 U.S.C. § 548

8.1     Ideal realleges the allegations set forth above and incorporates them by reference herein.

8.2     In the alternative, if First Fed is not required to credit the Funds and the Additional Funds to the Tualatin and Beverly Park Loans, then Ideal transferred the Funds and the Additional Funds without receiving reasonably equivalent value in exchange.

8.3     Upon information and belief, at the time Ideal transferred the Funds and the Additional Funds, Ideal was insolvent or became insolvent as a result of the transfer.

8.4     Upon information and belief, at the time Ideal transferred the Funds and the Additional Funds, Ideal was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with Ideal was an unreasonably small capital.

8.5     Upon information and belief, at the time Ideal transferred the Funds and the Additional Funds, Ideal intended to incur, or believed it would incur, debts that were beyond its ability to pay as they matured.

8.6     Ideal's transfer of the Funds and the Additional Funds to First Fed constituted a constructively fraudulent transfer.

8.7     Ideal is entitled to avoidance of the transfer and disgorgement of the Funds and the Additional Funds from First Fed.

## IX.     PRAYER FOR RELIEF

WHEREFORE, having asserted its Complaint, plaintiff prays for relief as follows:

A.     That the Court avoid and set aside the transfers outlined above;

B.     That the Court enter judgment against First Fed in an amount to be determined

DBS|LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

at trial;

C. That the Court enter a declaratory judgment as set forth above;

D. That the Court grant Plaintiff the injunctive relief requested above;

E. That the Court enter an order preserving any and all recovery herein for the benefit of the bankruptcy estate; and

F. For such other and further relief as the Court deems just and proper.

DATED this 8th day of November 2024.

DBS LAW

By  */s/ Daniel J. Bugbee*
Daniel J. Bugbee, WSBA No. 42412
Claire L. Rootjes, WSBA No. 42178
*Attorneys for Ideal Property Investments LLC*

ADVERSARY COMPLAINT - 11

DBS|LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

24-80033-FPC   Doc 1   Filed 11/08/24   Entered 11/08/24 15:51:22   Pg 11 of 12

ADVERSARY COMPLAINT - 1

